Argued September 13, affirmed October 10, 1916.

# STATE *v.* McCLARD.

(160 Pac. 130.)

**Criminal Law—Evidence—Other Offenses—Admissibility.**

1. As a general rule, evidence of other and distinct crimes than that charged in the indictment cannot be given.

**Criminal Law — Burning to Defraud Insurer — Evidence of Other Offenses.**

2. Such rule is subject to exception in prosecutions for burning property to defraud the insurer, and evidence that accused secured insurance on other property at a different place, and the property was burned very soon thereafter, is admissible as tending to show the intent.

[As to admissibility of testimony as to intention, see note in Ann. Cas. 1912D, 1043.]

**Criminal Law—Appeal—Scope—Preservation of Exceptions.**

3. It is the duty of the accused in his bill of exceptions to negative the existence of evidence which might, under some theory, render admissible that which was excepted to, or to negative any theory under which it might be admissible, and if he does not do so, the court cannot say that the evidence complained of was inadmissible.

From Marion: PERCY R. KELLY, Judge.

Department 1. Statement by MR. JUSTICE Mc-BRIDE.

The defendant, Fred McClard, was indicted for the crime of burning property with intent to injure and defraud the insurer, which crime it was alleged was committed on the seventh day of November, 1915. There was evidence tending to show that on the thirtieth day of October, 1915, he procured insurance in the North British & Mutual Insurance Company upon certain household goods, consisting principally of clothing and personal effects and then being in a frame building situated at 1745 Court Street, Salem, Oregon; that on November 7th a fire occurred in his room which totally destroyed the contents, and that a claim with an itemized list of the articles destroyed,

amounting in alleged value to $239.40, was duly presented to the insuring company. The state introduced with other testimony not shown in the bill of exceptions evidence tending to show that on March 8, 1916, defendant applied for and received insurance in the Pacific Fire Insurance Company upon a similar class of goods, situated in a dwelling-house at 1223 Ferry Street, Salem, Oregon, and that on the fifteenth day of the same month a fire occurred in his room whereby the alleged goods were destroyed, and he made proof of his loss and received $207 in satisfaction thereof. It also appeared that the goods in his room at Ferry Street were brought there contained in two suitcases, and two suitcases are listed among the items embraced in the proof of loss. To the introduction of this testimony defendant's counsel objected as being irrelevant, which objection was overruled by the court; and the defendant, having been convicted and sentenced, appeals.                                          AFFIRMED.

For appellant there was a brief over the name of *Messrs. Smith & Shields,* with an oral argument by *Mr. Guy O. Smith.*

For the State there was a brief over the names of *Mr. Elmo S. White,* Deputy District Attorney, and *Mr. Ernest R. Ringo,* District Attorney, with an oral argument by *Mr. White.*

MR. JUSTICE McBRIDE delivered the opinion of the court.

1, 2. The principal question discussed here is the admissibility and sufficiency of the evidence as to another and similar occurrence to the one charged. It is a general rule that evidence of other and distinct

crimes than that charged in the indictment cannot be given in evidence: *State* v. *Baker,* 23 Or. 441 (32 Pac. 161); *State* v. *McDaniel,* 39 Or. 172 (65 Pac. 520); *State* v. *O'Donnell,* 36 Or. 222 (61 Pac. 892); *State* v. *Lee,* 46 Or. 42 (79 Pac. 577); *State* v. *Martin,* 47 Or. 284 (83 Pac. 849, 8 Ann. Cas. 769); *State* v. *Kelliher,* 49 Or. 83 (88 Pac. 867); *State* v. *Baker,* 50 Or. 386 (92 Pac. 1076, 13 L. R. A. (N. S.) 1040); *State* v. *Finch,* 54 Or. 488 (103 Pac. 505); *State* v. *Hembree,* 54 Or. 474 (103 Pac. 1008); *State* v. *La Rose,* 54 Or. 555 (104 Pac. 299); *State* v. *Smith,* 55 Or. 408 (106 Pac. 797); *State* v. *Rader,* 62 Or. 37 (124 Pac. 195); *State* v. *Start,* 65 Or. 178 (132 Pac. 512); *State* v. *McAllister,* 67 Or. 480 (136 Pac. 354); *Sykes* v. *State,* 112 Tenn. 572 (82 S. W. 185, 105 Am. St. Rep. 991); *People* v. *Mayor,* 80 N. Y. 364; *Shipply* v. *People,* 86 N. Y. 375 (40 Am. Rep. 551); *Pinckord* v. *State,* 13 Tex. App. 468; *Commonwealth* v. *Shepard,* 1 Allen (Mass.), 575; *Boyd* v. *United States,* 142 U. S. 450 (35 L. Ed. 1077, 12 Sup. Ct. Rep. 292); *Ogle* v. *Brooks,* 87 Ind. 600 (44 Am. Rep. 778); *Schaser* v. *State,* 36 Wis. 429. But to this rule there are certain exceptions, for it has been frequently held that for the purpose of showing motive to commit a crime, to show the intent with which an act was committed, or to show that the act charged in the indictment was committed pursuant to a system of acts of the same character having in view a similar fraudulent result, such testimony can be admitted. This is particularly true in cases of counterfeiting, obtaining money by false pretenses, and setting buildings on fire to defraud insurance companies: *People* v. *Marrin,* 205 N. Y. 275 (98 N. E. 474, 43 L. R. A. (N. S.) 754), where many cases are collated and commented upon in an exhaustive note to the principal case. In trials for false pretenses the

rule is thus stated in Underhill on Criminal Evidence, Section 438:

"Evidence of similar offenses, involving the making of other false representations, is admissible against the prisoner to show that he was aware of the falsity of the statements made by him in the present instance, and that, knowing them to be false, he made them with the intent to deceive. Evidence of similar false pretenses is particularly relevant when it appears that the fraudulent act for which the accused is on trial does not stand alone, but is a part of a scheme not merely to defraud one individual, but to swindle the community at large."

See, also, *State* v. *Germain,* 54 Or. 395 (103 Pac. 521); *State* v. *Briggs,* 74 Kan. 377 (86 Pac. 447, 10 Ann. Cas. 904, 7 L. R. A. (N. S.) 278), and cases there cited.

The same rule has been applied in cases involving the burning of buildings with intent to defraud the insurance company: 4 Chamberlayne, Ev., § 3225; *Regina* v. *Gray,* 4 Fost. & F. 1102; *Kramer* v. *Commonwealth,* 87 Pa. 299; *State* v. *Huffman,* 69 W. Va. 770 (73 S. E. 292); *State* v. *Jones,* 171 Mo. 401 (71 S. W. 680, 94 Am. St. Rep. 786); *Knights* v. *State,* 58 Neb. 225 (78 N. W. 508, 76 Am. St. Rep. 78); *Hinkle* v. *State,* 174 Ind. 276 (91 N. E. 1090). The circumstances in these cases are various, and there are few of them exactly coincident with those in the case at bar, but from them we may deduce the principle that when the motive or intent of a party constitutes a material part of the offense charged, and particularly where the intent must necessarily be fraudulent in order to constitute the crime, evidence of similar acts may be received to show the intent in the particular case. It is not unusual for a man to insure his property and for a fire thereafter to consume it, but after

a series of insurances and subsequent burnings occurring within a comparatively short period, the average man—and the juryman is supposed to be such—is liable to conclude that the last burning is something more than a coincidence.  Take the case at bar: it is at least unusual that a lodger at such boarding-houses as exist in Salem, and whose clothing and worldly effects are contained in two ordinary suitcases, uses the extraordinary precaution of having them insured, and it is a singular coincidence that within a few days a fire should break out in the closet where they are stored and consume them.  It is also rather peculiar that the same lodger should between March and October have accumulated $207 worth of similar articles and taken them in suitcases to another lodging-house and promptly insured them, and that within a little over a week another fire should break out in his vicinity and again destroy his effects.  We do not have all the testimony here, and are therefore not informed as to the extent to which this series of insurings and burnings reached.

3. The bill of exceptions is meager, and it appears from it that there was other testimony.  While standing alone it might make a landlord reluctant to entertain such a lodger, it would not, perhaps, be sufficient to justify a conviction, but the bill of exceptions does not show that it stood alone, and it may for aught we are able to say from the record be a single link in a chain of occurrences of like character, each of which would strengthen the belief that the burning named in the indictment was not merely coincidental with other insurances and burnings, but occurred in pursuance of a design on the part of the defendant to systematically defraud the insurance companies by insuring his property and burning it.  If the evidence

could have upon any theory of the case been admissible, it was the duty of the defendant to have negatived that theory by proper statements in his bill of exceptions. If it was admissible as a link in a chain of such occurrences, it devolved upon him to show by the bill of exceptions that those necessary links were not supplied by other testimony. As we said in *Pacific Laundry Co.* v. *Pacific Bridge Co.,* 69 Or. 306 (138 Pac. 221), and here repeat:

"A bill of exceptions must point out error * * and make it plain that under no combination of circumstances could the testimony have been admissible."

The cases of *State* v. *Start,* 65 Or. 178 (132 Pac. 512), and *State* v. *McAllister,* 76 Or. 480 (136 Pac. 354), cited by counsel, are not in conflict with the views herein expressed. In *State* v. *Start,* Mr. Justice BURNETT quotes with approval an excerpt from the case of *State* v. *O'Donnell,* 36 Or. 222 (61 Pac. 892), which is as follows:

"The rule that evidence of crimes other than that charged in the indictment is inadmissible is subject to a few exceptions, speaking of which Mr. Underhill, in his valuable work on Criminal Evidence (Section 87), says: 'These exceptions are carefully limited and guarded by the courts, and their number should not be increased.' "

Among the exceptions noted by Mr. Underhill is evidence of other offenses to show intent. He states the exception as follows:

"Another exception to the rule occurs when the intention present in an act is material. Thus, suppose the question is: Was a given act, either by the accused, or by some other persons, intentional or accidental? Here it is relevant to prove that the person whose intention is in question had performed acts of a precisely similar nature either before or after the act

intention of which is in question. And if it be found that he has performed many such acts, we have the best of grounds for drawing the conclusion that the act, in the present instance, is intentional and not accidental. So where the commission of an act alleged to be a crime is admitted by the accused; but he denies that he intended to commit it or alleges that he did it without guilty knowledge, his doing similar acts wholly independent and unconnected with that under investigation is relevant to show intention. Evidence of similar and independent crimes (but never those which are dissimilar) is often relevant to show the presence of some specific intent. Thus, evidence of forgeries by the accused has been received to prove the intent to defraud, which is essential in forgery, and of arson or of attempts at arson to prove that a burning was not the result of accident. So, when it is material to show that a given act was done with a fraudulent intention, as, for example, in a prosecution for obtaining goods by false pretenses. Other disconnected false pretenses in which the presence of fraud is recognized may be proved to show the intent. To illustrate, where the accused had used a fraudulent abstract of title to induce one to sell him goods in exchange for real estate it may be shown that the accused had on the same day employed the same means to induce another person to sell him goods'': Underhill, Criminal Evidence (2 ed.), Section 89.

In the case of *State* v. *Start,* 65 Or. 178 (132 Pac. 512), the motive or intent with which the act charged was committed was not material or a necessary ingredient of the offense. Here it is the very gist of the crime, and herein lies the distinction between the two cases.

The judgment of the Circuit Court is affirmed.

AFFIRMED.

MR. CHIEF JUSTICE MOORE, MR. JUSTICE BURNETT and MR. JUSTICE BEAN concur.

MR. JUSTICE BENSON not sitting.