[No. 13718. Department Two.  May 18, 1917.]

GRANGER TELEPHONE & TELEGRAPH COMPANY, *Appellant*, v.

SLOANE BROTHERS, INCORPORATED, *Respondent*.[1]

EMINENT DOMAIN—DAMAGES—PROPERTY.  The damages to tele-
phone and telegraph lines, located in a highway under a franchise,
which necessarily results from improving the highway without neg-
ligence, is not a taking or damaging of private property without
just compensation first made as required by Const., art. 1, § 16; and
neither the county nor contractor will be liable therefor.

Appeal from a judgment of the superior court for King
county, Tallman, J., entered April 22, 1916, upon findings
in favor of the defendant, in an action for damages, tried to
the court.  Affirmed.

*B. L. Hubbell*, for appellant.

*Turner, Hartge & Turner*, for respondent.

MOUNT, J. — The facts in this case are not in dispute.
They may be briefly stated as follows:  The appellant had a
general franchise from Wahkiakum county to erect and main-
tain telephone and telegraph lines on the county roads of that
county.  Appellant erected certain telephone lines over one
of the county roads by setting poles in the highway and plac-
ing thereon its telephone and telegraph lines.  After this had
been done, the county decided to improve the highway, and
did so by letting a contract to the respondent to do the work.
The respondent, under the direction of the county engineer,
as provided for in the contract, and without any negligence,
proceeded to improve the road in accordance with the county
plan.  In doing this work, some of the appellant's telephone
poles were caused to fall, by necessary excavations.  The
appellant, in order to replace the poles, expended the sum of
$711.34.  The appellant then brought this action to recover
damages in that sum from the contractor.  Upon these facts,

[1]Reported in 165 Pac. 102.

the trial court denied a recovery, and the plaintiff has appealed.

The appellant argues that its property was placed upon the highway where it had a right to be. That, under the provisions of § 16 of art. 1 of the constitution, which provides that no private property shall be taken or damaged for public or private use without just compensation having been made, it is entitled to recover in this action. The argument proceeds upon the theory that, being rightfully in the highway, with its telephone poles, the county had no right to damage these poles without just compensation being made therefor. It is true that the appellant had a right in the highway by reason of the franchise, but that right is necessarily a qualified right. It cannot be reasonably argued that the county authorities may grant the right to a public service corporation to occupy a highway to the exclusion of the public, or the exclusion of the right of the county authorities to improve the highway so that it may be used by the public. A franchise granted upon a highway such as this would necessarily be qualified by these rights. Where the right is such qualified right, it follows that the county authorities, in the discharge of their duties to control the highway, may keep it in reasonable condition for ordinary use by the public, and the damage which necessarily follows to a licensee from an improvement of the highway would not be a taking or damaging of property within the meaning of the constitutional provision above quoted. The rule is stated in 13 R. C. L., at § 82, as follows:

"It is almost uniformly held that a gas or water company laying its mains and service pipes under the streets of a municipality acquires no vested right to an undisturbed location, but holds subject to the paramount right of the public to make such changes in the surface and subsoil of the street as may be required by the public interest; and hence any damage inflicted without negligence on the owner of the mains and pipes in the prosecution of a public improvement under the direction of the proper authorities is, in the absence of a

statute or an express contract allowing recovery, *damnum absque injuria.* This is equally true though the statute or ordinance under which the work is done provides for compensation to abutting owners, and though in making the improvement the municipality exercises its right of eminent domain. And a municipal contractor constructing such a public improvement is not liable for unavoidable injuries so inflicted. Moreover, a city has no right directly or indirectly to burden itself or its citizens with the cost of removing and replacing of the water-pipes, gas-pipes, telegraph, telephone and electric light poles, drains or conduits, or railway tracks that may necessarily be interfered with in laying its sewers in the streets."

And, at § 87, the rule is stated:

"Public service corporations occupying a street under a franchise are held to have acquired their rights on the condition, implied where not expressed, that the city reserves the full and unconditional power to make any reasonable change of grade or other improvement in its streets. Hence, in the absence of negligence or wantonness on the part of the city, such a corporation cannot maintain an action for damages occasioned by the necessity of taking up and relaying its pipes, tracks, or other appliances, in order to accommodate them to the new grade. So the power of the municipality to change the grade of its streets whenever and as often as the public needs and convenience require, is not affected by the fact that a street is occupied by a railroad company under a franchise. Ordinarily, also, the obligation rests on a railway company so situated to make its tracks conform to the established or changed grade of the street. But these ordinary powers and obligations may be enlarged or restricted by legislation or agreement, and this will be determined by the statutes and contracts having application to the case in hand."

Many authorities are cited to support this text. See, also, *Columbus Gaslight & Coke Co. v. Columbus,* 50 Ohio St. 65, 33 N. E. 292, 40 Am. St. 648, 19 L. R. A. 510; and *Scranton Gas & Water Co. v. Scranton,* 214 Pa. 586, 64 Atl. 84, 6 L. R. A. (N. S.) 1033, 6 Ann. Cas. 388, and note on page 390.

It follows, of course, that if the county itself is not liable, the contractor, who was the agent of the county for doing the work and had agreed to do the work in accordance with the plans and specifications of its contract with the county, and under the direction and superintendence of the county engineer, and where no negligence occurred in doing the work, would not be liable. *Kaler v. Puget Sound Bridge & Dredging Co.*, 72 Wash. 497, 130 Pac. 894.

We conclude, therefore, that the constitutional provision has no reference to this character of damages, and the trial court was right in dismissing the action.

The judgment is therefore affirmed.

ELLIS, C. J., FULLERTON, PARKER, and HOLCOMB, JJ., concur.